WO     IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


BOBBY LEWIS,         )
                 )
         Plaintiff,   )
                 )
    vs.            )
                 )
ALLSTATE INSURANCE COMPANY,  )
                 )   No. 3:15-cv-8074-HRH
         Defendant.  )   (Prescott Division)
_____)


<u>O R D E R</u>

<u>Motion for Summary Judgment</u>

Defendant moves for summary judgment.[1] This motion is opposed.[2] Oral argument

was requested and has been heard.

<u>Facts</u>

Plaintiff is Bobby Lewis.  Defendant is Allstate Insurance Company.

In 2000, plaintiff and his then-girlfriend, Mildred Kenyon, purchased a 1533 square

foot home at 17564 Ridgeway Drive, Yarnell, Arizona.  Kenyon believed they paid around

---

[1]Docket No. 37.

[2]Docket No. 41.

$65,000 for the home.[3]  Plaintiff believed they paid $85,000 for the home but "[i]t might have been less."[4]

After purchasing the home, plaintiff and Kenyon purchased a homeowner's insurance policy from defendant.  The policy provided for $88,000 in Dwelling Protection coverage; $8,800 in Other Structures Protection coverage; and $61,600 in Personal Property Protection coverage.[5]  Plaintiff testified that they purchased their home insurance from defendant because Kenyon had her automobile insured with defendant and wanted to stay with the same company for their house insurance.[6]  Plaintiff testified that he never spoke to anyone at Allstate when they were deciding to purchase the homeowner's policy, that Kenyon took care of this matter.[7]

Kenyon testified that she called David Vasquez, an agent for defendant, and "told him we needed house insurance and I kind of remember him asking me where a fire

---

[3]Deposition of Mildred Elizabeth Kenyon at 8:18-21, Exhibit B, Defendant's Motion for Summary Judgment, Docket No. 37.

[4]Deposition of Bobby Lewis at 9:16-21, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[5]Deluxe Homeowners Policy Declarations at 2, Exhibit D, Defendant's Motion for Summary Judgment, Docket No. 37.  Starting plaintiff's Dwelling Protection Coverage at $88,000 was not implausible given the purchase price which included the value of the land which  insurance does not cover.

[6]Lewis Deposition at 13:12-14, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[7]Id. at 17:23-18:6.

hydrant was, and I think maybe how many square feet. I don't remember anything else. He gave me a quote and that was it. I paid it."[8] Kenyon testified that she did not ask specifically about certain coverages.[9] Kenyon testified that no misrepresentations were made by defendant to get them to buy the homeowner's policy.[10] Kenyon testified that she did not remember if Vasquez told her that he was "going to provide ... a policy that gives you full coverage."[11] Kenyon testified that she never asked defendant to increase the policy limits and that she "just assumed that they [Allstate] knew what they were doing."[12] She testified that she never reviewed the policy and declarations page that was sent each year.[13] Kenyon testified that she called Vasquez in 2010 to change the deductible on the policy from $500 to $1000 because "I thought the price was going up too fast too high, and he changed the deductible to $1,000 to make the payment lower."[14]

---

[8]Kenyon Deposition at 11:15-20, Exhibit B, Defendant's Motion for Summary Judgment, Docket No. 37.

[9]Id. at 13:16-21.

[10]Id. at 11:7-21.

[11]Id. at 14:2-6.

[12]Id. at 15:4-16:1.

[13]Id. at 16:6-15.

[14]Id. at 17:6-21.

Plaintiff testified that it was his understanding that he was "fully covered" but that no one at Allstate told him that he was "fully covered."[15]  Plaintiff testified that he never asked defendant to increase the policy limits.[16]  With the Policy Declarations that were sent each year, defendant also sent a notice which provided that "[y]ou may want to add coverage, delete coverage, or change your coverage limits – or you may want to update coverage on valuable personal items, such as jewelry or artwork."[17]  Plaintiff testified that he did not think that he looked at the policy and declaration page each year, that he thought "we just wrote a check and sent them the money.  They sent a bill and we paid it."[18]

Plaintiff and Kenyon met with Vasquez in 2007 to review their insurance policies.[19] Vasquez testified that at that time, he explained coverage limits to them and that

> [t]he coverage limits based on our system automatically shows
> that it's sufficient.  But reviewing the coverages with the client
> to ensure that they understood those coverages is what I did.
> And also to identify opportunities.  So if they have opportuni-

---

[15]Lewis Deposition at 18:13-19:10, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[16]Id. at 26:15-20.

[17]Important Notice at 1, Exhibit G, Defendant's Reply [etc.], Docket No. 43.

[18]Lewis Deposition at 29:9-11, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[19]Deposition of David Vasquez at 20:24-21:1, Exhibit 1, Plaintiff's Response [etc.], Docket No. 41.

ties, if there's things that need to be changed, we can identify
that, discuss that, and discuss possible changes at that time.
No changes were made.[20]

Plaintiff's policy limits increased each year. For plaintiff's policy for the period

December 1, 2012 to December 1, 2013 (referred to as the "2013 policy" hereinafter), the

Dwelling Protection coverage was increased by $1000 from the previous year to a total of

$120,000.[21] The increase was based upon the Marshall Swift Boeckh Publications Building

Cost Index.[22] The court infers that the Index used a per square foot construction cost of $78

for 2012-2013 ($120,000 ÷ 1533 = $78.27). Vasquez testified that defendant's computer

system automatically assesses each year whether a home is sufficiently insured.[23] The 2013

policy also increased plaintiff's Other Structures Protection coverage to $12,000 and his

Personal Property Protection coverage to $84,000.[24]

On June 30, 2013, plaintiff's home and its contents were destroyed in a wildfire.

Defendant sent an estimator, Matt Martinez, to evaluate the loss. Martinez estimated that

---

[20]Id. at 21:16-23.

[21]Renewal Deluxe Homeowners Policy Declarations at 3, Exhibit A at 8, Defendant's
Supplemental Filing of Certified Insurance Policy, Docket No. 53.

[22]Id.

[23]Vasquez Deposition at 23:10-13, Exhibit E, Defendant's Motion for Summary
Judgment, Docket No. 37.

[24]Renewal Deluxe Homeowners Policy Declarations at 2, Exhibit F, Defendant's
Motion for Summary Judgment, Docket No. 37.

it would cost $146,750.55 to rebuild plaintiff's home; $2,995.41 to replace the other structures; and $9,146.46 to replace the trees/plants.[25]

On July 14, 2013, defendant sent plaintiff a check for $120,000, the full amount of the 2013 policy's Dwelling Protection coverage.[26]  Plaintiff testified that he received his check "quickly" and that defendant's employees were "extremely nice" during the claims process.[27]

Plaintiff contends that the home was underinsured.  As noted above, defendant's estimate to rebuild plaintiff's house was $146,750.55.  A September 25, 2013, estimate by Division Nine Contracting calculated the replacement cost of plaintiff's house as $268,420.00.[28]  Plaintiff's public adjuster, Unity Adjustments, calculated the replacement cost to be $272,226.65.[29]

---

[25]Estimate at 2, Exhibit 3, Plaintiff's Response [etc.], Docket No. 41.

[26]Plaintiff was also paid $6000 for the loss of trees/plants on the property and $3,321,31 for the loss of other structures.  Id. at Lewisclm 99-100.

[27]Lewis Deposition at 39:1-3, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[28]Budget Proposal at 2, Exhibit 4, Plaintiff's Response [etc.], Docket No. 41.

[29]Estimate at 26, Exhibit 5, Plaintiff's Response [etc.], Docket No. 41.

Plaintiff also made a Personal Property Protection claim.  Plaintiff submitted a personal property inventory, which lists property valued at $135,250.59.[30]  Plaintiff has yet to be paid anything on his Personal Property Protection claim.  Defense counsel advised at oral argument that defendant now has adequate proof of loss and is in the process of paying plaintiff's personal property claim.  It was not clear whether defendant is going to pay the $84,000 Personal Property Protection policy limits or some other amount.

Plaintiff testified that he does not believe that defendant intended to underinsure him.  Rather, he believes that defendant was negligent.[31]  Vasquez testified that it would be counterintuitive for him to have underinsured plaintiff given that his commission is based on the premium paid on the policy.[32]

In his reformed complaint, plaintiff asserts six claims against defendant.  Count 1 is a claim for breach of contract.  Plaintiff alleges that defendant breached the insurance contract by underinsuring his home.[33]  Count 2 is a claim for consumer fraud.  This claim is based on allegations that defendant intentionally made material misrepresentations of

---

[30]Exhibit 6 at 60, Plaintiff's Response [etc.], Docket No. 41.

[31]Lewis Deposition at 22:9-18, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[32]Vasquez Deposition at 57:18-58:14, Exhibit E, Defendant's Motion for Summary Judgment, Docket No. 37.

[33]Reformed Complaint of Bobby Lewis at 7, ¶ 37, Docket No. 8.

fact and/or intentionally withheld information to induce plaintiff to purchase and/or renew

his policy and that defendant intentionally underinsured plaintiff.[34]  Count 3 is a claim for

breach of the covenant of good faith and fair dealing.  Plaintiff alleges that defendant

> misuse[d] the "360 Value" and "RCT" software in estimating
> the costs of rebuilding; fail[ed] to research the actual construc-
> tion costs for rebuilding homes in Yavapai County;
> misrepresent[ed] policy terms to the [p]laintiff[]; arbitrarily
> changed the insured's replacement cost values and their actual
> cash values to lower amounts without giving any basis for
> doing so; and wrongfully ma[de its] insured[] "jump through
> hoops" in the processing of [his] claims...[[35]]

Count 4 is a claim for negligence.  Plaintiff alleges that defendant owed him a duty to

"properly prepare and submit estimates to rebuild the Property, rebuild its dwelling

extensions, and replace the contents that were destroyed."[36] Plaintiff alleges that defendant

breached its duties by "improperly making use of inadequate software in an effort to

deprive [him] of the benefits to which he was entitled under the Policy, arbitrarily and

intentionally disregarding replacement cost values, conditions, depreciation, and actual

cash values of items submitted to [defendant] by [its] insured[.]"[37]  Count 5 is a claim for

negligent misrepresentation.  Plaintiff alleges that defendant provided plaintiff, "both

---

[34]Id. at 7-8, ¶¶ 44-45 & 47.

[35]Id. at 6, ¶ 32.

[36]Id. at 10, ¶ 65.

[37]Id. at ¶ 66.

orally and in writing, with false and incorrect information about the scope of [his] insurance coverage and/or rights under the Policy."[38]   Count 6 is a claim for equitable reformation.  Plaintiff alleges that the insurance contract should be reformed because "[a]ll parties intended that Mr. Lewis' Property be fully insured against losses from fire under the Policy."[39]

Defendant now moves for summary judgment on all of plaintiff's claims.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  <u>Id.</u> at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or

---

[38]<u>Id.</u> at 11, ¶ 70.

[39]<u>Id.</u> at ¶ 78.

contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

### Count 1 – Breach of Contract Claim

In Count 1, plaintiff alleges that defendant breached the insurance contract by underinsuring his house.[40]  "If an insured's claim for benefits does not fall within the coverage of the policy, the insurer's failure to pay the claim does not constitute a breach of the insurance contract." Deese v. State Farm Mut. Auto. Ins. Co., 813 P.2d 318, 321 (Ariz. Ct. App. 1991), reversed on other grounds, 838 P.2d 1265 (Ariz. 1992).

Defendant contends that plaintiff is not alleging that defendant failed or refused to make payment under the applicable coverages of the policy.  Rather, defendant contends that plaintiff's only basis for his breach of contract claim is that the policy should have provided more coverage for Dwelling Protection.  But, defendant argues that this is not an allegation that can support a breach of contract claim.

In his response, plaintiff makes no argument as to his breach of contract claim. Although there is a heading in his responsive brief entitled "Breach of Contract/Insurance Bad Faith", the argument under that heading is devoted entirely to plaintiff's bad faith claim.  Thus, it appears that plaintiff has abandoned his breach of contract claim.  See

---

[40]Id. at 7, ¶ 37.

Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) (quoting Jenkins v. Cty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)) (" a plaintiff has 'abandoned ... claims by not raising them in opposition to [the defendant's] motion for summary judgment'").

Because plaintiff has abandoned his breach of contract claim, defendant is entitled to summary judgment on this claim.

<u>Count 2 – Consumer Fraud Claim</u>

Plaintiff concedes that his fraud claim is subject to dismissal because he has no evidence to support this claim.[41]  Thus, defendant is entitled to summary judgment on Count 2 of plaintiff's reformed complaint.

<u>Count 3 – Breach of the Covenant of Good Faith and Fair Dealing Claim</u>

In Count 3, plaintiff alleges that defendant "engaged in a variety of bad faith practices designed to delay and underpay [plaintiff's] claim[]", including misusing its software programs to estimate the cost of rebuilding, failing to research the cost of rebuilding homes in Yavapai County, misrepresenting policy terms to plaintiff, changing "replacement cost values and their actual cash values to lower amounts without giving any basis for doing so;" and making plaintiff "jump through hoops" in the processing of his claims.[42]

_____

[41]Plaintiff's Response [etc.] at 2, Docket No. 41.

[42]Reformed Complaint of Bobby Lewis at 5-6, ¶¶ 31-32, Docket No. 8.

"The tort of bad faith only arises when an insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action."  Lasma Corp. v. Monarch Ins. Co. of Ohio, 764 P.2d 1118, 1122 (Ariz. 1988).  "Thus, the tort will not lie for claims which are 'fairly debatable.'"  Id. (quoting Noble v. Nat'l Amer. Life Ins. Co., 624 P.2d 866, 868 (Ariz. 1981)).

Defendant argues that the evidence does not support plaintiff's allegations of bad faith.  Defendant points out that plaintiff has admitted that defendant's representatives were all "extremely nice" to him during the claim process,[43] that it is undisputed that defendant paid the policy limits for Dwelling Protection within two weeks of the fire, and that plaintiff has admitted that there is no evidence defendant intentionally underinsured his property.  And, defendant's expert, Anthony Cannon, opines that "Allstate's handling of [plaintiff's] claim was entirely consistent with insurance industry standards."[44]  Defendant argues that in light of this evidence no reasonable jury could find for plaintiff on his bad faith claim.

Plaintiff, on the other hand, argues that there is substantial evidence to support his bad faith, primarily that of his expert, Frederick C. Berry, Jr.  In his lengthy expert report,

[43]Lewis Deposition at 39:1-3, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[44]Report of Anthony L. Cannon, Esq. at 8, Exhibit H, Defendant's Reply [etc.], Docket No. 43.

Berry opines that defendant acted in bad faith during its investigation and its evaluation of plaintiff's claim.[45]   In particular, Berry opines that defendant failed to adequately investigate plaintiff's contention that his home was underinsured.[46]   Berry also opines that defendant is biased against insuring dwellings to their full replacement value due to fears of insurance fraud by the insured.[47]   Berry further opines that defendant did not take into account Vasquez's failure to provide plaintiff with appropriate advice as to coverage limits.[48]

There are genuine issues of material fact as to whether defendant acted in bad faith as to plaintiff's claim for Dwelling Protection coverage.   Defendant is not entitled to summary judgment on plaintiff's bad faith claim as that claim pertains to plaintiff's Dwelling Protection coverage.

Plaintiff also argues that there is evidence that defendant acted in bad faith by failing to promptly and fully pay the uncontested portion of his Personal Property Protection claim.

---

[45]Affidavit at 29-33, ¶ 39, Exhibit 9, Plaintiff's Response [etc.], Docket No. 37.

[46]Id.

[47]Id. at 31, ¶ 39H.

[48]Id. at 31-33, ¶ 39.

As an initial matter, defendant argues that plaintiff's argument that it acted in bad faith in connection with his Personal Property Protection claim fails because plaintiff's complaint does not contain any allegations with respect to this claim.  Defendant has, however, misread plaintiff's reformed complaint, which, in the "general allegations" section defines the "property" at issue to include the "contents" of plaintiff's home.[49]  The latter terms are incorporated by reference into plaintiff's bad faith claim.[50]  Plaintiff's reformed complaint adequately asserts a claim that defendant acted in bad faith during the processing of plaintiff's Personal Property Protection claim.

Plaintiff submitted a personal property inventory totaling $135,250.59 in May 2014.[51]  It is undisputed that defendant had not paid anything on this claim when defendant's motion for summary judgment was filed.  Defendant had taken the position that plaintiff had not provided any support or documentation for any of the inventoried items.[52]  Plaintiff argues that this is bad faith because the inventory he submitted provided substantially the same information as requested in a personal property claim form that

---

[49]Reformed Complaint of Bobby Lewis at 2, ¶ 4, Docket No. 8.

[50]Id. at 8, ¶ 55.

[51]Exhibit 6, Plaintiff's Response [etc.],  Docket No. 41.

[52]Email exchange between Kyle Hallstrom and Sam Alagha, Exhibit 11, Plaintiff's Response [etc.], Docket No. 41.

defendant provides to its insureds.[53]  Plaintiff also points out that Matt Martinez testified
that the information that plaintiff supplied in his inventory was sufficient "to support
accepting th[e] loss and paying out on the claim[.]"[54]  Plaintiff also points to the testimony
of Jason Johnson, another adjustor, who testified that it is common to not require formal
documentation for common household items, such as a bed.[55]  Johnson also testified that
"if we have enough information to pay an undisputed amount, then we're going to pay
that and not withhold payment on something that's confirmed...."[56]

When "the amount of benefits due, rather than coverage, [is] contested, [the insurer]
ha[s] a duty to pay promptly any undisputed portion of the claim."  <u>Filasky v. Preferred
Risk Mut. Ins. Co.</u>, 734 P.2d 76, 82 (Ariz. 1987).  The failure to do so "amounts to bad
faith."[57]  <u>Id.</u>  Although defendant is now in the process of paying plaintiff's Personal

----

[53]Exhibit 12, Plaintiff's Response [etc.], Docket No. 41.

[54]Deposition of Matt Martinez at 73:23-74:2, Exhibit 2, Plaintiff's Response [etc.], Docket No. 41.

[55]Deposition of Jason Johnson at 44:3-23, Exhibit 8, Plaintiff's Response [etc.], Docket No. 41.

[56]<u>Id.</u> at 53:23-54:1.

[57]Plaintiff also argues that defendant's failure to pay the undisputed portion of his personal property claim is a violation of A.R.S. § 20-462, which provides that "any first party claim not paid within thirty days after the receipt of an acceptable proof of loss by the insurer which contains all information necessary for claim adjudication shall be required to pay interest at the legal rate from the date the claim is received by the insurer." Plaintiff has not, however, alleged a claim based on A.R.S. § 20-462 in his reformed

(continued...)

Property Protection claim, there are questions of material fact as to whether defendant promptly paid the undisputed portion of plaintiff's Personal Property Protection claim or whether, as plaintiff has alleged, defendant made plaintiff jump through unnecessary hoops during the processing of this claim.  Thus, plaintiff's bad faith claim based on his Personal Property Protection coverage survives defendant's motion for summary judgment.

<u>Count 4 – Negligence Claim</u>

In Count 4, plaintiff alleges that defendant owed him a duty to "properly prepare and submit estimates to rebuild the Property, rebuild its dwelling extensions, and replace the contents that were destroyed."[58]  Plaintiff alleges that defendant breached its duties by "improperly making use of inadequate software in an effort to deprive [him] of the benefits to which he was entitled under the Policy [and] arbitrarily and intentionally disregarding replacement cost values, conditions, depreciation, and actual cash values of items submitted to [defendant] by [its] insured[.]"[59]

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the

---

[57](...continued)
complaint.

[58]Reformed Complaint of Bobby Lewis at 10, ¶ 65, Docket No. 8.

[59]<u>Id.</u> at ¶ 66.

-16-

defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." Gipson v. Kasey, 150 P.3d 228, 230 (Ariz. 2007).

Defendant argues that the facts of this case cannot support a negligence claim. Rather, defendant contends that the facts show that plaintiff was provided with the applicable coverages of the policy and the premium amount for the policy, which plaintiff accepted without ever requesting an increase in coverage.

Typical of many insured persons, it appears that plaintiff paid little attention to the cover letter which accompanied his 2012-2013 policy which advised, "[y]ou'll want to review the Policy Declarations to make sure you're comfortable with the coverage choices you've made."[60] Based upon what the court was told at oral argument, it may also be that plaintiff failed to advise defendant's agent of substantial improvements made to his home. Nonetheless, viewing the evidence in the light most favorable to plaintiff, as the court must do on motion for summary judgment, there are genuine issues of material fact as to plaintiff's negligence claim. There is no evidence that when Vasquez met with plaintiff and Kenyon in 2007 to review their policy limits he discussed whether the policy limits were sufficient, perhaps because defendant took the position that its computer system

---

[60]Letter from David Vasquez Agency to Mildred Elizabeth Kenyon and Bobby Lewis at 1, Exhibit A at 4, Defendant's Supplemental Filing of Certified Insurance Policy, Docket No. 53.

automatically determined what limits were sufficient.  But, under the facts of this case, it may have been negligent for defendant to rely solely on its computer system to determine policy limits, limits that current estimates of the cost of rebuilding suggest to be inadequate. As plaintiff points out, a reasonable jury could conclude that it was not solely his fault that he was underinsured, given that defendant had the expertise and systems dedicated to calculating what policy limits would be sufficient.

<u>Count 5 – Negligence Misrepresentation Claim</u>

In Count 5, plaintiff alleges that defendant provided plaintiff, "both orally and in writing, with false and incorrect information about the scope of [his] insurance coverage and/or rights under the Policy."[61]  More specifically, plaintiff alleges that defendant represented "that the Policy provided full replacement coverage for" his house "and the contents therein."[62]

> The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

---

[61]Reformed Complaint of Bobby Lewis at 11, ¶ 70, Docket No. 8.

[62]<u>Id.</u> at 2, ¶ 11.

KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co., 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

Plaintiff's negligent misrepresentation claim fails for two reasons. First, Kenyon testified that defendant did not make any misrepresentations when she and plaintiff bought the policy and plaintiff testified that he did not even speak to anyone at Allstate. Second, plaintiff testified that no one at Allstate told him that he was "fully insured."[63] Defendant is entitled to summary judgment on plaintiff's negligent misrepresentation claim.

### Count 6 -  Equitable Reformation Claim

In Count 6, plaintiff alleges that the insurance contract should be reformed because "[a]ll parties intended that Mr. Lewis' Property be fully insured against losses from fire under the Policy."[64]

Defendant argues that plaintiff must have evidence of fraud or inequitable conduct in order to be entitled to equitable reformation. This argument is based on Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co., 682 P.2d 388 (Ariz. 1984). There, the court observed that "'[w]here reformation is sought because of the mistake of one party only, it is essential that fraud or inequitable conduct be found in the other.'"  Id. at 401

---

[63]Lewis Deposition at 18:13-19:10, Exhibit C, Defendant's Motion for Summary Judgment, Docket No. 37.

[64]Reformed Complaint of Bobby Lewis at 11, ¶ 78, Docket No. 8.

(quoting Korrick v. Tuller, 27 P.2d 529, 531 (Ariz. 1933)).  Defendant argues that there is no evidence of fraud or inequitable conduct on its part.  Defendant points out that Kenyon testified that she did not recall any representations regarding the policy's coverages but rather that she called the agent, requested a quote for homeowners' insurance, which he gave her, and which she accepted.  Defendant insists that plaintiff has no evidence that it made any representations to him that contradicted the terms of the policy.  And, defendant points out that plaintiff has admitted that there is no evidence to support his fraud claim.  In light of this admission, defendant argues that plaintiff's equitable reformation claim must fail.

Although not cited by plaintiff, there is case law that suggests that plaintiff need not have evidence of fraud or inequitable conduct.  In A. I. D. Insurance Services v. Riley, 541 P.2d 595, 598 (Ariz. Ct. App. 1975), the court observed that "[w]here a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made[.]" "Where the party applying for insurance states the facts to the agent and relies on him to write the policy which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual and the insured is entitled to reformation."  Id.

Plaintiff contends that defendant made a mistake in calculating the amount of insurance needed and had the parties known that defendant's calculations were incorrect, they would have certainly agreed to higher coverage limits. But, plaintiff's contention that defendant made a mistake in calculating the amount of insurance needed is encompassed by plaintiff's negligence claim. There is no evidence that plaintiff intended and expressed to defendant's agent a desire for increased insurance coverage beyond that which was automatically included in the 2013 policy. Again, plaintiff and defendant's agent never had a discussion to the effect that plaintiff was fully covered for a total loss of his home. There being no evidence of a mutual mistake, defendant is entitled to summary judgment on plaintiff's equitable reformation claim.

### Punitive Damages

In his prayer for relief, plaintiff seeks punitive damages for his tort claims. In Arizona, "punitive damages are recoverable ... when the defendant's conduct is 'aggravated, outrageous, malicious or fraudulent' combined with an evil mind as evidenced by a showing that the defendant was consciously aware of the needs and rights of the insured and nevertheless, ignored its obligations." Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 681 (Ariz. 1986) (quoting Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986)). A motion for summary judgment as to punitive damages may be granted if "no reasonable

jury could find the requisite evil mind by clear and convincing evidence." <u>Thompson v.</u>
<u>Better-Bilt Aluminum Products Co.</u>, 832 P.2d 203, 211 (Ariz. 1992).

Although plaintiff's bad faith and negligence claims survive defendant's motion for summary judgment, plaintiff's prayer for punitive damages is dismissed. There is no evidence in this case of the kind of bad conduct or evil intent which must exist to support an award of punitive damages.

<u>Conclusion</u>

Defendant's motion for summary judgment[65] is granted in part and denied in part. The motion is granted as to plaintiff's breach of contract claim in Count One, his consumer fraud claim in Count Two, his negligent misrepresentation claim in Count Five, his equitable reformation claim in Count Six, and his prayer for punitive damages. Defendant's motion for summary judgment is denied as to plaintiff's bad faith claim in Count Three and his negligence claim in Count Four.

DATED at Anchorage, Alaska, this 28th day of September, 2016.

/s/ H. Russel Holland
United States District Judge

---

[65]Docket No. 37.